# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **CATHERINE ELAYNE WADE** | § | |
| | § | |
| | § | **CIVIL ACTION NO. 6:18cv94** |
| **vs.** | § | |
| | § | |
| | § | |
| **NANCY A. BERRYHILL** | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

On March 2, 2018, Plaintiff initiated this lawsuit by filing a complaint seeking judicial review of the Commissioner's decision denying her application for Social Security benefits. The matter was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636. For the reasons discussed below, the Commissioner's final decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion.

### PROCEDURAL HISTORY

Plaintiff protectively filed an application for Disability Insurance Benefits and an application for Supplemental Security Income on September 29, 2010, alleging a disability onset date of April 1, 2010. The applications were denied initially and on reconsideration. An administrative law judge ("ALJ") conducted a hearing and issued an unfavorable decision. The Appeals Council vacated the decision and remanded the matter to the ALJ for a new hearing. The ALJ conducted a hearing and issued a second unfavorable decision on July 3, 2014. The Appeals Council again vacated the ALJ's decision and remanded the matter for a new hearing.

The ALJ conducted a third hearing on June 21, 2016. The ALJ issued a decision on February 17, 2017, concluding that Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) the Social Security Act. Plaintiff submitted a request for review of the ALJ's decision. The Appeals Council denied the request for review on January 2, 2018. As a result, the ALJ's decision became that of the Commissioner. After receiving an extension of time from the Appeals Council to file a civil action, Plaintiff filed this lawsuit on March 2, 2018, seeking judicial review of the Commissioner's decision.

**STANDARD**

Title II of the Act provides for federal disability insurance benefits. Title XVI of the Act provides for supplemental security income for the disabled. The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See Davis v. Heckler*, 759 F.2d 432, 435 n. 1 (5th Cir. 1983); *Rivers v. Schweiker*, 684 F.2d 1144, 1146, n. 2 (5th Cir. 1982); *Strickland v. Harris*, 615 F.2d 1103, 1105 (5th Cir. 1980).

Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's]

judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d at 295 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). However, the Court must do more than "rubber stamp" the Administrative Law Judge's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook*, 750 F.2d at 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for

the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g);

*Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).  The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A).  A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five–step sequential process.  *Villa*, 895 F.2d 1022.  A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry.  *Id.*; see *Bowling*, 36 F.3d at 435 (citing *Harrell*, 862 F.2d at 475).  Under the five–step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity.  At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe.  At Step Three, the commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I.  Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non–severe.  Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work.  Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy.  20 C.F.R. §§ 404.1520(b)–(f).  An affirmative answer at Step One or a negative answer at Steps Two, Four,

or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id*. To obtain Title II disability benefits, a plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (*per curiam*).

## ALJ'S FINDINGS

The ALJ made the following findings in his February 17, 2017 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since April 1, 2010, the alleged onset date (20 CFR § 404.1571 *et seq*. and 416.971 *et seq*.).

3. The claimant has the following severe impairments: diabetes mellitus with neuropathy; status post partial amputation of right foot; sensory peripheral polyneuropathy; degenerative disc disease; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant had the residual functional capacity to perform sedentary work as defined by 20 CFR 404.1567 and 20 CFR 416.967, except that she can stand/walk continuously for 30 minutes; frequently, but not constantly, perform bilateral reaching, handling, fingering, and pushing/pulling; and occasionally perform overhead reaching and operate bilateral foot controls. She occasionally can work around dust, odors, fumes, and humidity/wetness, but she cannot operate motor vehicles, work around moving machinery, or work in temperature extremes.

6. I applied the expedited process provided in 20 CFR 404.1520(h) & 416.920(h), deferred any finding regarding the younger claimant's ability to perform past relevant work and proceeded to Step 5 of the sequential evaluation of disability.

7. The claimant was born on September 15, 1969, and was 40 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45–49 (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

# ADMINISTRATIVE RECORD

*Administrative Hearings*

Plaintiff testified at her hearing before the ALJ on June 21, 2016. Plaintiff testified that she lives with a cousin and her cousin's son. She stated that she cooks dinner and does laundry when she can. She completed the eleventh grade and has not driven much since a toe amputation.

Plaintiff testified that she first noticed her legs going numb in March or April 2010 when she fell off of a ladder. She used to work as a painter, but she reached the point where she couldn't hold the brush and could not stand on her feet for long periods of time. She also stated that she had numbness in her legs due to diabetic neuropathy and her legs would give out without warning. Plaintiff testified that she cannot feel the bottom of her feet and she has numbness from her toes to her hips. Plaintiff estimated that she can stand for ten minutes and walk for approximately fifty feet. She stated that she elevates her legs to reduce swelling.

Plaintiff explained that she recently had a toe amputated due to pressure sores. She stated that she now has an open sore on her toe on her other foot that is being monitored. Plaintiff also testified that she has pain in her spine while sitting. She estimated that she can sit for one hour at a time. She also has numbness in her fingers due to carpal tunnel syndrome, but she was unable to have surgery when she lost her insurance.

Plaintiff testified that she previously took medication for depression, but she is not currently taking any depression medication. She was recently referred to a cardiologist for chest pain. Plaintiff stated that she is unable to work because her legs give out, her diabetes is not controlled, and she has sores on her feet. Plaintiff testified that she cooks dinner, does laundry, and does dishes. She rides in an electric cart when she goes to the grocery store.

A vocational expert witness, Russell Bowden, also testified at Plaintiff's hearing. The ALJ presented Mr. Bowden a hypothetical individual of Plaintiff's age and education with no past work, who can lift and carry up to ten pounds occasionally, stand and walk continuously for thirty minutes for a total of two hours during an eight-hour workday, and sit continuously for two hours for a total of six hours during an eight-hour workday. The individual can reach overhead bilaterally occasionally during the workday, handle, finger, push, and pull frequently, and occasionally work in the presence of dust, odors, fumes, humidity, and wetness. The individual cannot climb ladders, scaffolds, stairs, or ramps, and cannot perform stooping or bending forward at the waist. Mr. Bowden identified the following unskilled sedentary jobs that would be available with the restrictions in the hypothetical: (1) lens inspector, DOT 716.687-030, SVP 2, unskilled, sedentary, with 1,600 jobs in Texas and 16,000 jobs in the national economy; (2) film inspector, DOT 726.684-050, SVP 2, unskilled, sedentary, with 2,200 jobs in Texas and 22,00 jobs in the national economy; and (3) dowel inspector, DOT 669.687-014, SVP 2, unskilled, sedentary, with 1,350

jobs in Texas and 13,500 jobs in the national economy. Mr. Bowden explained that these jobs are normally performed in a seated position in four two-hour segments and they do not require any specific walking, standing, or retrieving materials.

The ALJ presented a second hypothetical adding a limitation for occasional operation of foot controls. Mr. Bowden testified that the individual could still perform the identified jobs because they do not require the operation of foot controls. Mr. Bowden also explained that the Dictionary of Occupational Titles does not break down overhead reaching into categories by direction and does not delineate the continuous time period required to sustain a particular activity, as opposed to the total time period during a workday. He testified that his opinion that the identified jobs are consistent with the restrictions in the hypotheticals is based upon his direct observation of these jobs being performed and his conversations with supervisors. He also stated that it is consistent with the Dictionary of Occupational Titles.

If the hypothetical is changed, such that the individual cannot stoop, bend, kneel, or crouch, Mr. Bowden testified that the individual could not perform any work because sitting requires bending. He also stated, however, that the identified jobs do not require specific bending other than required to sit. Mr. Bowden distinguished bending and stooping by stating that bending requires bending at the waist and stooping implies that you are also bending your knees. The ALJ interjected that Social Security Ruling 85-15 defines stooping as bending the body downward and forward by bending the spine at the waist. If the individual cannot stoop as defined in SSR 85-15, Mr. Bowden testified that the individual could not perform the identified jobs because they require bending forward.

Mr. Bowden testified that the identified jobs typically provide for the individual to work two hours, take a ten to fifteen minute break, work two hours, take a lunch break, work two hours,

take a ten to fifteen minute break, and then work two hours. He stated that there is no tolerance for additional breaks. He also stated that the individual would have an ability to alternate between sitting and standing, but could not walk about while performing the job and could not elevate her feet above heart level. Mr. Bowden testified that missing work at least three days per month would preclude employment.

*Medical Record*

Plaintiff went to the emergency room with chest pain on August 7, 2010. She had a normal EKG and was diagnosed with pneumonia.

Plaintiff saw Dr. Farooq in 2010 after falling off a ladder. She had swelling and tenderness in her right leg. Dr. Farooq noted that Plaintiff was taking pain medication. At a return visit on September 7, 2010, Plaintiff complained of numbness in her leg, throbbing back pain, and numbness in her hands. She was prescribed Lyrica. On October 7, 2010, Plaintiff reported that Lyrica made her sleepy and did not help with her pain. Dr. Farooq prescribed Requip and Lortab. A chest CT on October 19, 2010 showed diffuse fatty infiltration of the liver, small periumbilical fat containing hernia, and cholelithiasis. Dr. Farooq treated boils on Plaintiff's neck and armpit on November 8, 2010. Plaintiff reported increased numbness in her legs and balance problems at a visit on November 15, 2010. Plaintiff's musculoskeletal exam revealed negative straight leg raises, deep tendon reflexes +2/4, and normal range of motion. Dr. Farooq continued Plaintiff on her medications and asked her to return in one month. He also recommended an endocrinology consultation for high testosterone levels. A December 30, 2010 MRI of the lumbar spine showed degenerative disc disease in the lower thoracic spine, L4-L5 degenerative disc disease including a 4mm disc bulge, disc desiccation and mild facet osteoarthritis, and L5-S1 degenerative disc disease

including a 4mm disc bulge, disc desiccation, mild facet osteoarthritis, and mild right and moderate left neural foraminal narrowing.

Plaintiff had a consultative examination by Dr. Robert Newberry on December 18, 2010. Dr. Newberry described Plaintiff as a forty-one year old, morbidly obese female who appeared her stated age and was not in acute distress. Examinations of Plaintiff's HEENT, neck, heart, lungs, and abdomen were normal. There was no clubbing, cyanosis, or edema in her extremities and no lesions on her skin. Plaintiff was alert and had good eye contact and fluent speech. Her mood was appropriate and she had clear thought processes. Plaintiff exhibited normal memory and good concentration. Cranial nerves were grossly intact. She had a symmetric, steady gait and good hand-eye coordination. Plaintiff's muscle strength was normal. A sensory examination showed mild hyperesthesia of the lower extremities below the knees. Straight leg testing was negative and reflexes were symmetric. Plaintiff had no joint swelling or musculoskeletal erythema, effusion, tenderness or deformity. She was able to lift, carry, and handle light objects, but she was unable to squat. Plaintiff exhibited an ability to rise from a sitting position without assistance and she had no difficulty getting up and down from the exam table. Plaintiff was able to walk on heels and toes with ease, perform tandem walking, and stand, but she could not hop on either foot. Plaintiff was able to dress and undress. She had decreased thoracolumbar range of motion with flexion of sixty degrees. Range of motion in the cervical spine, elbows, shoulders, wrists, hands, hips, knees, and ankles/feet was normal.

Dr. Newberry opined that Plaintiff has right leg pain of radicular quality that may be due to a herniated nucleus pulposus or other lower back injury. He concluded that Plaintiff can be expected to sit two hours, stand one hour, and walk thirty minutes at a time in an eight-hour workday before needing a break due to leg pain. He also stated that Plaintiff can be expected to

lift and carry no more than ten to twenty pounds due to leg pain. Dr. Newberry opined that Plaintiff

can occasionally bend, stoop, and crouch and she can frequently reach, handle, feel, grasp, and

finger.

Plaintiff returned to Dr. Farooq on February 8, 2011, complaining of a skin break out

caused by Requip and requesting a letter stating that her condition will last more than a year.[1] Dr.

Farooq signed a letter on February 8, 2011 stating that Plaintiff "is disable [sic] and will continue

to be disable [sic] for more than a yr."[2] He listed Plaintiff's active problems as cholelithiasis,

degenerative disc disease, leukocytosis, unspecified, high testosterone, hirsutism, metrorrhagia,

numbness, leg pain (joint), and low back pain. At a return visit on April 7, 2011, Plaintiff

complained of swelling in her legs. The swelling improved with the use of a diuretic. Plaintiff

also reported tingling in her right leg and hands. Dr. Farooq increased Plaintiff's Lyrica

prescription on May 10, 2011. One week later, she reported that the increase did not help and Dr.

Farooq prescribed Ultram. At a follow up on May 24, 2011, Plaintiff stated that the Ultram also

did not help, but she tried a neighbor's Fentanyl patch and it helped. Dr. Farooq prescribed

Fentanyl patches for Plaintiff. She returned on June 7, 2011 requesting stronger pain medication

and Dr. Hassad doubled the dosage of the Fentanyl patch.

Dr. Farooq added amlodipine for hypertension on July 7, 2011. At a follow up on August

9, 2011, Plaintiff had a blood pressure of 150/94. On August 16, 2011, Dr. Farooq added Lasix.

A progress note on September 1, 2011 states that Dr. Farooq discussed a CT report showing a right

adnexal mass and that he would consult surgery. On October 3, 2011, Plaintiff reported losing

sensation in her legs and worsening pain in her feet. Dr. Farooq added a Savella starter pack.

When she returned on October 17, 2011, Plaintiff reported that Savella was helping her leg pain.

---

[1] *See* Administrative Record, ECF 13-10, at *84 (Bates stamp p. 662).
[2] *See* Administrative Record, ECF 13-10, at *53 (Bates stamp p. 631).

Plaintiff went to the emergency room on October 30, 2011 with abdominal pain. On examination, her abdomen was soft and she had moderate tenderness in her right upper quadrant and a positive Murphy's sign. An abdominal sonogram showed a single gallstone, gallbladder wall thickening, a dilated common duct, and a fatty liver. Plaintiff was admitted and had a laparoscopic cholecystectomy.

Plaintiff was referred to Dr. Mahmood Akhavi for a neurological evaluation due to numbness in her arms and legs. Dr. Akhavi examined Plaintiff on April 30, 2012. Plaintiff had full range of motion in the cervical spine and no cervical paraspinal muscle spasms or tenderness. She had normal muscle tone, volume and strength, but absent deep tendon reflexes in the upper extremities and ankles, and trace in the knees. Plaintiff exhibited decreased sensation to pain, temperature, and vibration in the "glove/stocking pattern." Dr. Akhavi diagnosed numbness and paresthesia and hypersensitivity of the extremities, lower more than upper and mainly in the feet, probably due to peripheral polyneuropathy and maybe secondary to diabetes. He also assessed restless leg syndrome, high blood pressure, diabetes, and obesity. An arterial doppler on May 22, 2012 showed no lower extremity arterial occlusion.

At a follow up on September 27, 2012, Dr. Farooq noted that Plaintiff's blood sugar was still high. She was placed on a medically supervised diet. On October 30, 2012, Plaintiff reported that Cymbalta was working well for the pain in her legs and her mood. Plaintiff reported right shoulder pain and a burning sensation in her lower back around to the right hip on January 10, 2013. Dr. Farooq increased Plaintiff's Fentanyl dosage.

Plaintiff had an assessment by a counselor at Lakes Regional MHMR on April 25, 2013. Jeremy Pugh, LPC, diagnosed major depressive disorder. Dr. Kashi Bagri evaluated Plaintiff on May 10, 2013, and noted sad facial expression, appropriate dress, agitated motor activity,

appropriate affect, appropriate range, appropriate speech, appropriate interview behavior, orientation to time, place, person, and situation, intact recent memory, good insight and judgment, and normal intellect. He recommended treatment with medication.

When Plaintiff saw Dr. Farooq on May 23, 2013, she had a foot ulcer. Dr. Farooq prescribed Keflex and Valium. The wound looked better on June 6, 2013. Plaintiff returned for a follow up on June 20, 2013 and complained of crying and feeling weighted down. Dr. Farooq refilled Plaintiff's Valium prescription. When she returned a week later, Plaintiff reported feeling much better.

A podiatrist, Dr. Mahammed Farooqui, evaluated Plaintiff's open wound on her right first toe in the emergency room on September 16, 2013. His examination revealed a rash on the right first toe with slight tissue loss with minimal drainage. He also noted tenderness and swelling. Plaintiff received wound care and dressing. Plaintiff returned to Dr. Farooqui on September 18, 2013. Dr. Farooqui debrided the fibrotic ulcer to a healthy bleeding granular base and flushed the wound with sterile saline. He gave Plaintiff Hydrofera Blue and instructed her to do daily wet-to-dry dressing changes to remove fibrotic tissue. Dr. Farooqui also gave Plaintiff a postoperative shoe to take pressure off the dorsal and plantar ulcer and instructed her to finish her antibiotic course.

On October 28, 2013, Dr. Farooq completed a Medical Release/Physician's Statement. Dr. Farooq opined that Plaintiff has a permanent disability. He determined that Plaintiff can sit for one hour, stand for thirty minutes and walk for six minutes. He also estimated that Plaintiff can do no climbing, ten minutes of kneeling/squatting, ten minutes of bending/stooping, less than forty pounds of pushing/pulling, one hour of keyboarding and less than forty pounds of lifting and carrying.

On January 6, 2014, Plaintiff complained of right shoulder pain with decreased range of motion. Plaintiff refused an X-Ray. Dr. Farooq continued Plaintiff on Fetanyl.

Plaintiff was admitted to the hospital on August 9, 2014 to receive intravenous antibiotics and wound care for treatment of ongoing infection in the left great toe. Dr. Behboudi performed an incision and drainage of the wound on August 11, 2014. He recommended intravenous antibiotics over fourteen days. Plaintiff was discharged on August 26, 2014.

Plaintiff was referred to a podiatrist, Dr. David Andreone, for evaluation of the wound on her left first toe. Dr. Andreone discussed diabetic foot care with Plaintiff on August 4, 2015 and encouraged her to stop smoking. He debrided the wound and cleaned it. When Plaintiff returned on August 11, 2015, Plaintiff denied having pain or problems with the wound and stated that she believed the wound was closed. On examination, Plaintiff no longer had an open wound.

Plaintiff first saw Dr. William Featherston on July 21, 2015 to establish care for diabetes and hypertension. Plaintiff had a weight of 340 pounds with a height of 67 inches and a blood pressure of 149/82. Plaintiff had an ulcer on her foot and an abnormal sensory exam. At a return visit on September 17, 2015, Plaintiff reported sharp pain in her low back radiating to her knee and a stinging, sizzling pain in her calves and feet. Plaintiff had tenderness in the lumbar spine and an antalgic gait. Dr. Featherston prescribed atorvastatin, gabapentin, and phentermine, and refilled furosemide. Dr. Featherston also completed a Medical Release/Physician's Statement on September 18, 2015. Dr. Featherston gave a primary disabling diagnosis of lumbar radiculopathy and a secondary disabling diagnosis of fibromyalgia. He also stated that Plaintiff has complications due to diabetic peripheral neuropathy. He opined that Plaintiff has a permanent disability.

Plaintiff returned to Dr. Andreone on November 11, 2015 and reported that the wound on her left first toe opened up again. Wounds on the first toe of both feet were cleaned and debrided. At a follow up on November 24, 2015, Plaintiff's wounds were treated and she was advised to decrease her activity level and elevate her feet. On December 8, 2015, Plaintiff's pulses were +1/4 bilaterally and edema was present on the right and left first toes. Plaintiff had a large wound on the plantar surface of the right first toe, but no open wound on the left. Plaintiff received wound care treatment on December 10, 2015 and was advised to stay off her foot. Plaintiff did not want to wear a total contact cast.

Plaintiff had a consultative examination by Dr. F.P. Reuter on December 18, 2015. Plaintiff appeared wearing a wedge shoe and was able to ambulate. She exhibited an ability to pick up a paper clip with either hand. Her lower extremities had good reflexes, she had good strength, and straight leg raises were unremarkable. Plaintiff was able to stand on either foot, but squatting was minimal. Plaintiff could bend to forty-five degrees. Plaintiff's right foot had an open wound on the plantar aspect of her great toe, but it did not appear infected. No ulcers were observed on the left foot. Dr. Reuter noted that Plaintiff had symptoms of peripheral neuropathy and ulceration of the toe. There was no evidence of a nerve root disorder causing low back pain and no muscular wasting or weakness.

Dr. Reuter completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). He opined that Plaintiff can occasionally lift and carry up to ten pounds, sit for two hours at a time, for a total of eight hours in an eight-hour workday, stand for thirty minutes, for a total of two hours in an eight-hour workday, and walk for thirty minutes, for a total of one hour in a eight-hour workday. Dr. Reuter determined that Plaintiff can occasionally reach overhead and frequently reach all other directions, handle, finger, feel, and push/pull. He also stated that Plaintiff

can occasionally operate foot controls, but she can never climb, balance, stoop, kneel, crouch, or crawl. Concerning environmental limitations, Dr. Reuter stated that Plaintiff can occasionally operate a motor vehicle and be exposed to humidity, wetness, dust, odors, fumes, pulmonary irritants, and vibrations, but she can never be exposed to unprotected heights, moving mechanical parts, extreme cold, and extreme heat.

On December 29, 2015, Plaintiff was again instructed in wound care to stay off her right foot and elevate it because she would not wear a total contact cast. Plaintiff was seen by Dr. Sarah Low on February 5, 2016 for a diabetes follow up. Dr. Low noted that Plaintiff was taking gabapentin for back pain and neuropathy, but she reported continuing pain. She also stated that Plaintiff was on a fentanyl patch and hydrocodone prescribed by Dr. Featherston, but she was not comfortable prescribing those medications for Plaintiff. Plaintiff also requested to stop using the fentanyl patch. Dr. Low described Plaintiff as "nonadherent to recommendations."[3]

On March 30, 2016, Dr. Andreone noted that Plaintiff continued to walk on her foot and continued to smoke. He advised Plaintiff that amputation of the right first toe was necessary due to the severity of the wound and the cellulitis. Dr. Andreone performed a partial first ray amputation on March 31, 2016. He then performed a delayed primary closure with remodeling of soft tissue and bone of the right foot first ray on April 4, 2016. Plaintiff was discharged from the hospital on April 8, 2016. At a follow up on April 28, 2016, Plaintiff reported walking on her right foot and driving to a doctor visit. Plaintiff related having some feeling in her foot. Dr. Andreone advised Plaintiff to not bear weight on her right foot and not drive.

Dr. Andreone also completed a Disability Impairment Questionnaire after examining Plaintiff on May 25, 2016. Dr. Andreone opined that Plaintiff can perform a job in a seated

---

[3] *See* Administrative Record, ECF 13-16, at *96 (Bates stamp p. 1221)

position, standing and/or walking for less than one hour and it is medically necessary for her to elevate both legs while sitting. He stated that Plaintiff can occasionally lift up to twenty pounds and can occasionally carry up to ten pounds. She does not have significant limitations in reaching, handling, or fingering, and after healing from surgery can frequently grasp, turn, and twist objects, use hands/fingers for fine manipulations, and use her arms for reaching, including overhead. Dr. Andreone opined that pain, fatigue or other symptoms would frequently be severe enough to interfere with Plaintiff's attention and concentration during an average eight-hour workday. While her surgical site is healing, she will need unscheduled breaks, but not after it is healed. Dr. Andreone estimated that Plaintiff would likely be absent from work as a result of her impairments or treatment more than three times per month.

Plaintiff had a follow up with Dr. Low on June 6, 2016. Plaintiff reported chest pain. An EKG showed no change from Plaintiff's last EKG. Dr. Low noted that Plaintiff's diabetes was improved, but still uncontrolled. She increased Plaintiff's glimepiride dosage.

## DISCUSSION AND ANALYSIS

In her brief, Plaintiff presents two issues for review: (1) whether the ALJ's RFC finding that she has no difficulty stooping is supported by substantial evidence; and (2) whether the ALJ committed reversible error by presenting a hypothetical question to the vocational expert that was less restrictive than the RFC that was ultimately assigned. Plaintiff asserts that the ALJ erred, and substituted her own opinion, when she failed to include a limitation for stooping. Plaintiff submits that the consultative examiner, Dr. Reuter, and her physician, Dr. Farooq, both opined that she has limitations on stooping and there is no medical opinion in the record finding otherwise. The ALJ's RFC finding, however, does not include any limitations on stooping or bending. Further, Plaintiff argues that the hypothetical posed to the vocational expert did not include limitations on operating

motor vehicles or exposure to moving machinery or temperature extremes, which were included in the ALJ's RFC finding. Plaintiff contends that the defective hypothetical requires a remand.

In response, the Commissioner asserts that the ALJ properly discounted Dr. Reuter's opinion that Plaintiff is unable to stoop because his examination revealed bending of the spine to forty-five degrees at the waist. The Commissioner states that two of the jobs identified by the vocational expert witness—lens inspector and dowel inspector—require no stooping. The Commissioner agrees that the RFC adopted by the ALJ is more restrictive than the hypothetical that was presented to the vocational expert witness, but she submits that Plaintiff has not shown prejudice resulting from the hypothetical that was presented. The Commissioner argues that the jobs identified by the vocational expert witness do not require the operation of motor vehicles, working around moving machinery, or working in temperature extremes.

In her written decision, the ALJ stated that Dr. Reuter's opinions are entitled to great weight because he had an examining relationship with Plaintiff, his opinions are well supported by his clinical findings and his opinions are consistent with the other medical evidence of record. The ALJ then added the following statement:

> However, I rejected Dr. Reuter's opinion that the claimant can "never" perform stooping. Stooping is defined as "bending the body downward and forward by bending the spine at the waist" (SSR 85-15). Dr. Reuter's clinical findings showed the claimant could perform forward flexion of the spine, i.e. bending the spine downward and forward at the waist, at 45 degrees out of a normal 90 degrees (20 CFR 404.1527(d)(3) & 416.927(d)(3)). I find that forward flexion of 45 degrees is consistent with an ability to perform stooping at least occasionally during workday as demanded by sedentary work (SSR 96-9p).

*See* Administrative Record, ECF 13-2, at *35 (Bates stamp p. 34).

A non-exertional limitation on stooping is addressed in SSR 96-9p: "An ability to stoop occasionally, i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A *complete* inability to stoop would significantly erode the unskilled

18

sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work." Consistent with SSR 96-9p, the vocational expert witness testified that the jobs he identified would not be available if the individual cannot stoop as defined in SSR 85-15.

There is an inconsistency in the ALJ's opinion because she explained that Plaintiff can occasionally perform stooping, but she did not include any limitation on stooping in the RFC. It is unclear from the opinion whether the ALJ found that Plaintiff can perform occasional stooping or that Plaintiff has no postural limitations. The ALJ's opinion also does not explain her conclusion that an ability to bend at the waist to forty-five degrees on examination means that an individual can occasionally perform stooping, or bending the body downward and forward by bending the spine at the waist, during a normal workday. The ALJ rejected Dr. Reuter's opinion that Plaintiff can never stoop with no explanation other than her own interpretation of Dr. Reuter's examination findings. The ALJ must present good cause for rejecting an examining physician's opinion. *See Butler v. Barnhart*, 99 Fed.Appx. 559 (5th Cir. 2004) (requiring the ALJ to show good cause for rejecting the opinions of all physicians who treated and/or examined the claimant).

Here, the ALJ's RFC finding is unclear concerning whether Plaintiff has a postural limitation on stooping. In addition, the ALJ failed to show good cause for rejecting Dr. Reuter's opinion concerning Plaintiff's postural limitations. The Commissioner's argument of harmless error lacks merit because, consistent with SSR 96-9p, the vocational expert's testimony established that some ability to stoop, or bend at the waist, is required for each of the identified jobs. For these reasons, the ALJ's RFC finding is not supported by substantial evidence.

Next, the parties agree that the hypothetical question presented to the vocational expert did not include limitations on operating motor vehicles, working around machinery, and working in temperature extremes. These limitations were, however, included in the RFC finding. Although the Commissioner seeks to explain in her briefing that the same jobs would be available with these limitations, the ALJ's decision does not address the difference between her hypothetical to the vocational expert and her RFC finding. "Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand." *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

The Commissioner asserts that a remand on this basis alone is not appropriate because Plaintiff's counsel had an opportunity to question the vocational expert witness and did not ask questions about the omitted limitations. A remand, however, is already necessary in this case to address the ALJ's error in assessing Plaintiff's postural limitations. On remand, the ALJ should also address the inconsistency between the RFC finding and the hypothetical presented to the vocational expert.

For the reasons identified, the ALJ's decision is not supported by substantial evidence. As a result, the decision of the ALJ denying benefits must be reversed. *See Carey v. Apfel*, 230 F.3d 131, 143 (5th Cir. 2000). The errors require a remand. It is therefore

**ORDERED** that the Commissioner's final decision is **REVERSED** and **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with the findings above.

So ORDERED and SIGNED this 26th day of September, 2019.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE